UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

K.M.L. (XXX-XX-1125)  CIVIL ACTION NO. 18-cv-1047

VERSUS  MAGISTRATE JUDGE HORNSBY

COMMISSIONER OF SOCIAL SECURITY

**MEMORANDUM RULING**

**Introduction**

K.M.L. ("Plaintiff") was born in 1981. She completed the tenth grade and has worked as a self-employed beautician, McDonald's cashier, sitter, and cook. She stopped working in 2016 due to the onset of grand mal seizures, and she applied for disability benefits. ALJ Charles Lindsay held an evidentiary hearing and issued a written decision in which he found that Plaintiff was not disabled. The Appeals Council denied a request for review, which made the ALJ's opinion the Commissioner's final decision.

Plaintiff filed this civil action to seek the limited judicial relief that is available under 42 USC § 405(g). The parties filed written consent to have a magistrate judge decide the case, and it was referred to the undersigned pursuant to 28 USC § 636(c). For the reasons that follow, the Commissioner's decision will be reversed and remanded.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis established in the regulations. See Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). At step one, he found that Plaintiff had not engaged in substantial gainful activity since the onset of her

seizures.  At step two, he found that Plaintiff had seizure disorder and headaches that impose more than minimum limitations on her ability to do basic work activities.  But he did not find that the impairments met or medically equaled a listed impairment at step three.  The ALJ found that her condition "lacked the frequency or intensity" to meet the criteria outlined in Listing 11.02 (Epilepsy).  Tr. 17-18.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she could occasionally perform postural activities like climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling.  The ALJ also found that Plaintiff was unable to climb ladders, ropes, or scaffolds and that she could have no exposure to certain hazards like unprotected heights, dangerous moving machinery, or heavy automotive equipment.

A vocational expert ("VE") offered testimony relevant to steps four and five.  The VE testified that Plaintiff was capable of performing past relevant work as a fast food cashier, which is classified as light work and does not require the performance of work-related activities precluded by Plaintiff's RFC.  The ALJ accepted that testimony and found that Plaintiff was not disabled because she was capable of performing past relevant work.  The VE also testified that Plaintiff could work as a short order cook, price marker, cashier, document preparer, or election clerk.  The ALJ also accepted this testimony and found that, alternatively, Plaintiff was not disabled because she was capable of making a successful adjustment to other work.  Tr. 20-21.

**Issues on Appeal**

Plaintiff's brief identifies two issues for appeal:

1. The ALJ's Listing analysis is not supported by substantial evidence because the evidence indicates that Plaintiff's seizures meet Listing 11.02, and the ALJ provided only a conclusory analysis.

2. The ALJ's RFC determination is not supported by substantial evidence because he did not consider the side effects of Plaintiff's medications, which require her to take two naps per day.

**Standard of Review; Substantial Evidence**

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Evidence**

**A. Hearing Testimony**

Plaintiff testified at a hearing in June 2017. She was accompanied by an attorney. Plaintiff testified that she was 35 years old, single, and lived with her four children. She finished the ninth grade. She has held several past jobs, including housekeeper in a nursing

home, cashier for McDonalds, and fast food cook. Her last full-time job was as a fast food cook in 2006. Since then, she worked part-time as a beautician from February 2014 to December 2014 and as a sitter from April 2015 to February 2016. Tr. 68-71. Plaintiff testified that she stopped working because, "I've been having these seizures and my doctor said I'm not allowed to go back. If I don't have a seizure in six months I could, but I'm still having them so I haven't gone six months yet without having one." Tr. 72. She also stopped driving in December 2015 due to the seizures. Tr. 79.

Plaintiff testified that when she has a seizure, her eyes roll back in her head, she foams at the mouth, chews her tongue, passes out, and urinates on herself. She said that the seizures can be two or three weeks apart sometimes, maybe months apart. She said that she had a seizure the week before the hearing. Tr. 72-73.

Plaintiff testified that she takes Klonopin to stop a seizure if it lasts for longer than a minute. She takes Keppra daily to prevent seizures, and she takes Depakote daily for the seizures and for depression. Tr. 74-75. She said that since she started taking the medicine, she has started to have headaches and dizziness. She did not mention having to take naps due to the medicine. Tr. 78. When asked whether there was anything that had not been addressed that would keep her from working, she replied, "No." Tr. 82-83.

VE Lenora Maatouk testified that a person with Plaintiff's RFC, as assessed by the ALJ, could perform Plaintiff's past relevant work as a fast food cashier. The VE also determined that Plaintiff could perform other jobs, such as short order cook, price marker, cashier, document preparer, and election clerk. Tr. 87-89. However, if Plaintiff required two additional breaks, that would "eliminate all jobs." Tr. 89. She stated that, generally,

employers do not allow more than one absence per month, but that varies from employer to employer. Tr. 90.

**Medical Evidence**

Plaintiff presented to the emergency department at Christus Coushatta on November 12, 2015, with complaints of a seizure. She did not remember the episode, but her boyfriend described it as "shaking, eyes rolled back in head." The episode lasted around five minutes, and she lost urinary continence. Tr. 247. A CT scan was performed but did not result in significant findings. Tr. 254. Plaintiff was discharged and told to follow up with her primary care physician. Tr. 248.

The same day, Plaintiff saw Certified Family Nurse Practitioner Pam Gates. She reported the same seizure as she reported to the emergency department. Tr. 272-276. At a follow-up appointment in January 2016, Plaintiff reported having multiple small seizures. On January 4, 2016, she had a seizure that lasted only a few seconds, but she chewed her tongue and lost bladder control. She was prescribed Keppra. Tr. 276-278. On January 12, 2016, she returned to see CFNP Gates after having another seizure. She reported that she had five seizures since November. Notes state that when she has a seizure "her eyes roll back in head and she shakes all over." Tr. 272-275.

On January 25, 2016, Plaintiff saw Acute Care Nurse Practitioner Dena Novak at PGL Glenwood Brain Spine and Neurology in Monroe. She reported that she was having one seizure every other week, with stiffness and whole-body jerking. She was diagnosed with "juvenile myoclonic epilepsy, not intractable, w/o stat epi" and was told to continue Keppra. Tr. 295-298

In April 2016, Plaintiff told ACNP Novak that the seizures were recurring about once per month. Novak listed the following as symptoms of the seizures: "altered level of consciousness, automatic behaviors, tongue biting, unresponsiveness, urinary incontinence." Plaintiff also complained of "severe sleepiness" with the medication and stated that she slept about 2 hours after each dose. She scored a 3 on the Epworth Sleepiness Scale ("ESS"). She was prescribed Depakote in addition to the Keppra. Tr. 299-302

State agency consultant James Williams, MD, did not examine Plaintiff but did review her medical records before issuing findings on June 10, 2016. He found Plaintiff's statements regarding her symptoms to be only partially consistent. Tr. 95. In his report, he stated, "The evidence shows that your seizures can be controlled by taking medication regularly and by following doctor's orders." Tr. 98. He found that she did have a medically determinable impairment (major motor seizures), but the alleged level of intensity, persistence, and functionality-limiting effects were not supported by the total file evidence. Tr. 95. He determined that her condition was not severe enough to keep her from working.

On June 22, 2016, Plaintiff followed up with ACNP Novak. She stated that her last seizure was April 23, 2016 and that the medication had good results. Tr. 304-07. In December 2016, she reported that her last seizure was on November 21, 2016 and consisted of a staring episode with no jerking. The note from the visit said the seizure "was not as severe as some in the past. Had 2 in October, states she urinated on herself with both of those." She was then discharged from the care of PGL Glenwood Brain and Spine because the facility stopped accepting Medicaid.

In January 2017, Plaintiff was referred by Dr. Wood to University Health for a video EEG. According to the report, "Patient had been having increased frequency in seizures and change in characteristic of seizures. She states that her seizures have been GCT originally and now consist of staring spells with neck movements, last known seizure was in December." Tr. 320. However, the referral note from Dr. Wood stated: "Previously seizures monthly, over last several months been increasing in frequency every 2-3 weeks. Characterized as GTC w/ LOC, Bladder incontinence, tongue bites (lateral side), and post-ictal state." Tr. 331. The "history" portion of the notes from that visit stated: "This is a 35-year-old female referred by Dr. James Wood from Glenwood Clinic for video EEG study because of increasing frequency and change to the characteristics of seizures. The seizures are characterized as generalized tonic-clonic with loss of bladder, bowel incontinence, tongue biting on the lateral side and a postictal state occurring monthly, increasing every 2-3 weeks." Tr. 337.

Plaintiff also kept a log of her seizures. Tr. 242. Some of the entries in the log would have the date and just the word "seizure." Two of the entries, February 6, 2017 and March 14, 2017, said "seizure stare." The log shows that she had seizures in September, October, November, and December of 2016. She had a seizure in January 2017, "stare seizures" in February and March, and two seizures in June 2017.

**Analysis**

Plaintiff first argues that the ALJ erred in summarily rejecting her contention that she meets the requirement of a listed impairment. The listings found in the regulations describe levels of impairment related to each of the major body systems. The

Commissioner has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity." Sullivan v. Zebley, 110 S.Ct. 885, 891 (1990); 20 C.F.R. § 404.1525 and § 416.925. Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis.

Listings criteria are "demanding and stringent." Falco v. Shalala, 27 F.3d 160, 162 (5th Cir.1994). A mere diagnosis of a condition will not suffice. The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." § 404.1525(d); § 416.925(d). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a step three listing determination. Sullivan,110 S.Ct. at 891 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria").

Plaintiff contends that she meets the requirement of Listing 11.02 for epilepsy, which must be "documented by a detailed description of a typical seizure and characterized by" the requirements of one of four subsections. Plaintiff points to subsection 11.02(A): "Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)."

Listing 11.00H2 state that the agency requires "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures." 11.00H1a explains: "Generalized tonic-clonic seizures are

characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling." In comparison, 11.00H1b explains that dyscognitive seizures "are characterized by alteration of consciousness without convulsions or loss of muscle control." During a dyscognitive seizure, "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur."

When the ALJ reached step three, he made a finding that Plaintiff does not have impairments that meet or equal the severity of a listed impairment. The entire analysis was: "The claimant's seizure disorder was fully considered with the criteria outlined in Listing 11.02 (Epilepsy), but her condition lacked the frequency or intensity to meet the criteria outlined in that Listing." Tr. 17-18.

The claimant in <u>Audler v. Astrue</u>, 501 F.3d 446 (5th Cir. 2007) attacked an ALJ's step three finding for being too conclusory. The ALJ in that case did not identify the listed impairment for which the claimant's symptoms failed to qualify, nor did she provide any explanation for her conclusion that the symptoms did not meet a listed impairment. The Fifth Circuit vacated the decision and remanded because the ALJ did not offer enough explanation to allow the reviewing court to tell whether the decision was based on substantial evidence. The plaintiff was able to point to evidence in the record that suggested she might satisfy the listing, so the error was not harmless.

Plaintiff was able to point to a description of her original seizure given by her boyfriend. Her medical records contained reports of several seizures over several months. The evidence suggests the seizures were of a kind that would arguably satisfy the tonic-clonic requirement of the listing. As for frequency, Plaintiff's seizure log indicated seizures in four consecutive months between September and December of 2016. The log appears to differentiate between the original seizures and "seizure stare" that Plaintiff did not begin to log until more recently. Thus, there is significant evidence, meriting assessment and discussion, regarding whether Plaintiff meets Listing 11.02(A).

Considering this evidence and the lack of a more detailed discussion of the listing claim in the ALJ's decision, the court cannot find that the decision is supported by substantial evidence. The parties offer competing arguments for why Plaintiff did or did not meet her burden given the evidence at hand, but the court should not make that decision in the first instance. And the court should speculate reasons that may have supported the ALJ's conclusions. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).

The correct course is to reverse the Commissioner's decision and remand for further proceedings, which may include further factual exploration of the nature of the several seizures noted on the seizure log. The Commissioner should also address the other issue raised by Plaintiff, the claim that she suffered significant drowsiness due to medication side effects. A thorough assessment of that issue may avoid the need for further appellate proceedings. See Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir.1999); Heck v Colvin, 674

Fed. Appx. 411 (5th Cir. 2017) (addressing claims of side effects and the need for the ALJ to address).

Accordingly, the Commissioner's decision to deny benefits is reversed pursuant to sentence four of 42 U.S.C. § 405(g). This case will be remanded to the agency for further proceedings. A separate judgment will follow.

THUS DONE AND SIGNED in Shreveport, Louisiana, this the 31st day of May, 2019.

Mark L. Hornsby
U.S. Magistrate Judge